UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 2 9 2019

-------------------------------------------------------------

In re NEW YORK CITY DEPARTMENT OF
EDUCATION

-------------------------------------------------------------

THIS DOCUMENT RELATES TO:

All Actions

-------------------------------------------------------------

MASTER FILE: 15-CV-7150
(AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Marisol Oliveras and Plaintiff Christian Martinez bring this consolidated action

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"),

42 U.S.C. § 1981, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et*

*seq.* ("NYCHRL") against Defendants Thomas Esposito, James Rafferty, and the New York City

Department of Education ("DOE"), asserting various discrimination, failure to promote,

retaliation, and hostile work environment claims.

Defendants now move for summary judgment on the following claims: (1) all § 1981

claims in the consolidation action; (2) Plaintiffs' discrimination and retaliation claims against

Defendant Esposito under the NYCHRL; (3) Plaintiff Oliveras' failure to promote claim against

Defendant Esposito under the NYCHRL; and (4) any NYCHRL claims brought against

Defendant DOE.[1]

---

[1] Defendants do not move for summary judgment on the following claims: (1) Plaintiffs' hostile work
environment claim under the NYCHRL from the Second Complaint; (2) Plaintiff Oliveras' race and gender
discrimination, retaliation, and hostile work environment claims against Defendant James Rafferty under Title VII
and the NYCHRL from the First Complaint; and (3) Plaintiff Oliveras' race and gender discrimination, retaliation
and hostile work environment claims under Title VII against Defendant DOE from the First Complaint.

1

For the following reasons Defendants' motion is GRANTED IN PART AND DENIED IN PART.

## I.  Background

### A.  Factual Background

The following facts are undisputed, except where specifically noted.[2] Facts asserted by Defendants and not denied by Plaintiffs are deemed admitted for purposes of these motions. *See* Local Rule 56.1(c) and (d). Plaintiff Oliveras was employed as a cleaner at DeWitt Clinton High School, a DOE school, for over twenty years. Dkt. No. 78 ("Pl. Rule 56.1") ¶ 15. Her son, Christian Martinez also worked at DeWitt Clinton High School as a cleaner. Pl. Rule 56.1 ¶¶ 18, 22. Plaintiff Martinez was later promoted to the position of handyperson at the school. Pl. Rule 56.1 ¶ 76. Both Plaintiffs identify as "Hispanic of Puerto Rican descent." Pl. Rule 56.1 ¶ 5. Defendant Esposito began serving as the Custodial Engineer at DeWitt Clinton High School around December 3, 2015. Pl. Rule 56.1 ¶ 32. Defendant Esposito supervised Plaintiffs. *See id.* Plaintiffs were periodically involved in a variety of workplace incidents that form the basis for this action.

### 1.  Plaintiffs' Overtime Payments

Plaintiff Martinez testified that, at some point, Defendant Esposito began to deny him overtime. Pl. Rule 56.1 ¶ 67. Plaintiff Martinez could not recall when this occurred, but indicated it was after Plaintiff Oliveras had participated in a union grievance hearing against Defendant Esposito. Pl. Rule 56.1 ¶ 69. Plaintiff Oliveras testified that her union grievance hearing was sometime between October 4, 2016 and late December, 2016. Pl. Rule 56.1 ¶ 69.

---

[2] The parties did not always provide specific dates or time frames for when certain incidents occurred. When possible, the Court has included pertinent dates extracted from the record.

Plaintiff Martinez acknowledged that Joseph Luciano, an individual hired as a part-time employee, was hired to do the work that Plaintiff Martinez previously handled during his overtime work. *See* Pl. Rule 56.1 ¶¶ 70–71. Defendant Esposito testified that his understanding was that Luciano's race was "Spanish" and that he believed that Luciano's national origin was "Dominican." *See* Pl. Rule 56.1 ¶ 74. When Luciano was unavailable, Plaintiff Martinez was asked to perform the work, and was paid overtime. *See* Pl. Rule 56.1 ¶¶ 70–71. Defendant Esposito testified that he hired Luciano because he was forced to follow a "straight budget," which required paying out less overtime. *See* Pl. Rule 56.1 ¶¶ 72–73. Pay sheets document that Plaintiff Martinez received overtime payments throughout Defendant Esposito's tenure. *See* Pl. Rule 56.1 ¶ 71.

Plaintiff Oliveras testified that she was not receiving overtime work that she believed she was entitled to receive. *See* Pl. Rule 56.1 ¶ 117. Plaintiff Oliveras acknowledged that she was informed that there was "no budget" for her to receive overtime work. Pl. Rule 56.1 ¶ 118.

### 2. Plaintiff Martinez's Other Discrimination Incidents

Plaintiff Martinez also testified regarding various other incidents. First, Plaintiff Martinez testified that Defendant Esposito did not always provide him with the necessary supplies for Plaintiff Martinez to complete his work tasks in a timely manner. *See* Pl. Rule 56.1 ¶¶ 80–81. Specifically, Plaintiff Martinez painted the school fields with field paint, and Defendant Esposito was often late in giving him the field paint before scheduled games. *See id.*

Second, Plaintiff Martinez alleged in the Second Complaint that Defendant Espositio had "denied him the appropriate pay scale." Second Complaint ¶ 60. Plaintiff Martinez had been promoted to handyperson by Defendant Esposito's predecessor. Pl. Rule 56.1 ¶ 76–77. Plaintiff Martinez testified that after he received his promotion to handyperson, he was not sure whether

he received the requisite pay increase. Pl. Rule 56.1 ¶ 77. Plaintiff Martinez testified that once he asked Defendant Esposito about the pay increase, Defendant Esposito informed him that the salary increase was reflected in his paycheck. *See* Pl. Rule 56.1 ¶ 79. The record contains no evidence that Plaintiff Martinez even filed a union grievance regarding the alleged loss in pay.

### 3. Plaintiff Oliveras' Other Discrimination Incidents

Plaintiff Oliveras testified that she believed that Defendant Esposito did not permit her to use snow machinery to clear away snow because of her gender. Pl. Rule 56.1 ¶ 94. In the Second Complaint, Plaintiff Oliveras also alleged that she was required to clean more disgusting bathrooms than her male counterparts. *See* Second Complaint at ¶ 36. The parties point to no evidence in the record regarding this allegation.

### 4. Plaintiff Oliveras' Failure to Promote Claim

Plaintiff Oliveras alleged that Defendant Esposito failed to promote her to a handyperson position because of her gender. *See* Pl. Rule 56.1 ¶ 99. Plaintiff Oliveras testified that, "every time [she] asked him for a position, [Defendant Esposito] would tell her that because [she is] a woman [she] cannot handle that position." *Id.* Plaintiff Oliveras also testified that Defendant Esposito made "jokes about women." *Id.* Plaintiff Oliveras provided the names of three individuals whom she believed Defendant Esposito hired as a handyperson instead of her: Ron Spring; Nick Basomato; and Maria Pascal. *Id.* Defendant Esposito explained that Spring, Basomato, and Pascal were all hired for part-time positions, and not for the full time position of handyperson. Pl. Rule 56.1 ¶¶ 102, 104, 108. Plaintiff Oliveras had filed two union grievances that pertained to Defendant Esposito hiring Pascal, which stated a claim based on Defendant Esposito "fill[ing] an open Handy man / Secretary position with another employee of less seniority or from outside the building." Pl. Rule 56.1 ¶¶ 110–11.

4

### 5. Plaintiffs' First Termination

On December 17, 2016, Plaintiffs were terminated. *See* Pl. Rule 56.1 ¶ 10. According to Defendants, Plaintiffs were terminated because they did not show up to school to shovel snow, which was a violation of custodial rules. *See* Dkt. No. 73, ("Def. Rule 56.1") ¶ 34. Plaintiffs dispute this, and argue that the regular practice was that they only had to show up and shovel if it was more than three inches of snow. Pl. Rule 56.1 ¶ 34. On that day, three other employees were also terminated. Pl. Rule 56.1 ¶ 38. Subsequently, in January 2017, both Plaintiffs were reinstated following a settlement of a local union grievance filing. Pl. Rule 56.1 ¶ 40.

### 6. Plaintiffs' Second Termination

Plaintiffs were then terminated again on March 27, 2017. Pl. Rule 56.1 ¶ 43. Plaintiff Oliveras' termination notice explained that she was terminated for punching in Plaintiff Martinez's daily time card before Plaintiff Martinez had actually arrived at work. Pl. Rule 56.1 ¶ 44. And, relatedly, Plaintiff Martinez's termination notice explained that he was terminated because Plaintiff Oliveras had punched in his daily time card before he arrived at work. *Id.* Defendant Esposito testified that: (1) he received a text from Plaintiff Martinez indicating that Plaintiff Martinez would be late; (2) he witnessed Plaintiff Oliveras enter the office where time cards are kept at around 7:04 A.M.; (3) he reviewed surveillance footage that showed Plaintiff Oliveras enter the office where time cards are kept around 7:04 A.M.; and (4) the surveillance footage showed Plaintiff Martinez entering the building around 7:40 A.M. *See* Def. Rule 56.1 ¶¶ 45–56. Plaintiff Martinez's time card was punched in as 7:04 A.M. *See* Pl. Rule 56.1 ¶ 52. Defendant Esposito then called the union borough chairman, Pedro Arroyo, and informed Mr. Arroyo of what he had observed. Pl. Rule 56.1 ¶¶ 56, 60. Mr. Arroyo advised Defendant Esposito that they should be terminated. *See* Pl. Rule 56.1 ¶ 60. Defendant Esposito testified

that such conduct—punching in someone else's time card—would be considered willful misconduct under the applicable collective bargaining agreement, and would result in termination. Pl. Rule 56.1 ¶ 45. The conduct is also prohibited by the rules and regulations applicable to custodial staff. Pl. Rule 56.1 ¶ 46. Plaintiffs dispute that Plaintiff Oliveras punched in Plaintiff Martinez's time card. *See* Pl. Rule 56.1 ¶¶ 49–55.

### B. Procedural Background

This action arises from two consolidated cases: *Oliveras v. Rafferty et al.*, No. 15-CV-07150, and *Oliveras et al. v. Esposito*, No. 17-CV-2553. The first case ("First Complaint") was filed in 2015. *See* Pl. Rule 56.1 ¶ 1. The operative complaint in that case is the second amended complaint, filed on April 25, 2016. *See* Dkt. No. 75-2. The second case ("Second Complaint") was filed on April 10, 2017, and the original complaint remains the operative complaint. *See* Dkt. No. 75-3. On August 25, 2017, the parties filed a status letter, and Defendants requested that the Court consolidate the two lawsuits into a single action. *See* Pl. Rule 56.1 ¶¶ 11–12. The Court consolidated the cases. Pl. Rule 56.1 ¶ 13. On March 14, 2018, Defendants moved for partial summary judgment ("First Summary Judgment") on: (1) Plaintiffs' discrimination and retaliation claims against Defendant Esposito under § 1981 and the NYCHRL; (2) Plaintiff Oliveras' failure to promote claim against Defendant Esposito under § 1981 and the NYCHRL; and (3) any NYCHRL claims brought against Defendant DOE. *See* Dkt. Nos. 72–76. On April 16, 2018, Plaintiffs filed an opposition to Defendants' motion. *See* Dkt. Nos. 77–80. On April 30, 2018, Defendants filed a reply brief in further support of their motion. *See* Dkt. Nos. 81–82.

On January 8, 2019, the Court requested supplemental briefing in light of the Second Circuit's decision in *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) which states that "[42 U.S.C.] § 1981 does not provide a separate private right of action against state actors."

6

Dkt. No. 84. After reviewing the supplemental briefs, the Court allowed Defendants to move for summary judgment ("Second Summary Judgment") on all additional § 1981 claims in the consolidated action. *See* Dkt. No. 87. On January 29, 2019, Defendants moved for summary judgment on all of the remaining § 1981 claims. Dkt. No. 89. On February 21, 2019, Plaintiffs opposed Defendants' motion. Dkt. No. 93. On February 27, 2019, Defendants filed a reply memorandum of law in further support of their motion. Dkt. No. 94.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that it is entitled to relief as a matter of law. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, when the burden of

proof at trial would fall on the non-moving party, the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element" of the non-moving party's claim. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In doing so, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

Although "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions[, n]onetheless, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citations omitted); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (It is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## III. Discussion

The Court will now address Defendants' motion for partial summary judgment on: (1) all § 1981 claims; (2) Plaintiffs' discrimination and retaliation claims under the NYCHRL against Defendant Esposito; (3) Plaintiff Oliveras' failure to promote claim under the NYCHRL against Defendant Esposito; and (4) any NYCHRL claims brought against Defendant DOE.[3]

---

[3] The Court notes that Plaintiffs devote a significant portion of their First Summary Judgment opposition

## A.  42 U.S.C § 1981 Claims

Defendants move to dismiss all § 1981 claims against Plaintiffs.  This includes: (1)
Plaintiffs' hostile work environment, discrimination, retaliation § 1981 claims against Defendant
Esposito in the Second Complaint; (2) Plaintiff Oliveras' § 1981 failure to promote claim against
Defendant Esposito; and (3) Plaintiff Oliveras' discrimination and retaliation claims against
Defendant Rafferty.

Section 1981 guarantees, in relevant part, that "[a]ll persons within the jurisdiction of the
United States shall have the same right in every State . . .to make and enforce contracts, . . . and
to the full and equal benefit of all law and proceedings for the security of persons and property as
is enjoyed by white citizens." 42 U.S.C. § 1981(a).  A recent Second Circuit decision, *Duplan v.
City of New York*, held that "§ 1981 does not provide a separate private right of action against
state actors" apart from § 1983, and any allegations against such entities must therefore be
brought pursuant to the latter provision.  888 F.3d 612, 621 (2d Cir. 2018).  In the First
Complaint and the Second Complaint, Plaintiffs did not pursue their § 1981 claims under § 1983.
Defendants argue in their Second Summary Judgment that this mandates outright dismissal of all
of the § 1981 claims.  *See* Dkt. No. 90 at 3–5.  The Court disagrees.  Following the Second
Circuit's approach in *Duplan,* the Court will construe the § 1981 claims as causes of action
brought under § 1983 and discuss whether the claims can survive pursuant to § 1983 caselaw.
*See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (discussing whether the §

---

brief addressing the various hostile work environment claims in this case. Pl. Br. at 1, 14–15, 16–18, 25.  However,
Defendants did not move for summary judgment on any hostile work environment claims in their First Summary
Judgment.  Defendants only moved for summary judgment on their § 1981 hostile work environment claims in their
Second Summary Judgment, pursuant to a specific legal theory under *Duplan*, which is discussed in greater detail
below.  Accordingly, the Court need not address Plaintiffs' substantive arguments made on their hostile work
environment claims in their First Summary Judgment opposition brief, as it is non-responsive to Defendants'
motions.

1981 claims, although not plead pursuant to § 1983, were sufficiently alleged under § 1983 caselaw); *see Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010); *Lawtone-Bowles v. City of New York*, No. 17-CV-8024 (AJN), 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019); *Healy v. Bd. of Educ. Ret. Sys. of City of New York*, No. 17-CV-04016, 2019 WL 1243791, at *4 (E.D.N.Y. Mar. 18, 2019); *Westbrook v. City Univ. of New York*, 591 F. Supp. 2d 207, 223 (E.D.N.Y. 2008); *see also Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (per curiam) ("plaintiffs seeking damages for violations of constitutional rights" do not need "to invoke § 1983 expressly in order to state a claim.").

Throughout the remainder of this Opinion & Order, the Court will therefore refer to these claims as "cause[s] of action" brought pursuant to § 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). For clarity, Plaintiffs are granted leave to amend their complaints to add a citation to § 1983. *See Johnson*, 135 S. Ct. at 347; F. R. Civ. Pro. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires.").

### 1. Plaintiffs' § 1983 Discrimination Claims Against Defendant Esposito

Plaintiffs allege national origin, racial, and gender discrimination against Defendant Esposito. As discussed above, the Court will construe Plaintiffs' claims against Defendant Esposito as brought under § 1983. "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). "A person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317–18, (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "[S]tate

employment is generally sufficient to render the defendant a state actor[.]" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982). And the Second Circuit has explained that "individuals may be held liable under §§ 1981 and 1983 for certain types of discriminatory acts." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004). There is no doubt that Defendant Esposito acted under the color of state law, as he was an employee of Defendant DOE. Accordingly, the only question then, is whether there is sufficient evidence for a jury to conclude that Defendant Esposito acted to deprive Plaintiffs of a federal right.

Whether Plaintiffs suffered a deprivation of their federal rights is assessed under the burden-shifting analysis set forth in *McDonnell Douglas*. *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). A plaintiff first bears the minimal burden of establishing a *prima facie* case of discrimination. If he is so able, he is then aided by a presumption of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event the presumption disappears and the plaintiff bears the greater burden of proving that the employer's proffered reason was mere pretext for discrimination. *Id.*

To establish a *prima facie* case of discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent. *McDonnell Douglas*, 411 U.S. at 802.

After a plaintiff demonstrates a *prima facie* case of discrimination, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for its action," although it "need not persuade the court that it was actually motivated by the proffered reason." *Delaney*, 766 F.3d at 168 (internal quotation marks omitted). If the defendant makes this showing, the

11

presumption of discrimination is rebutted, and the burden shifts back to the plaintiff to show "that a reasonable jury could conclude that the employer's determination was in fact the result of discrimination." *Ghent v. Moore*, 324 F. App'x 55, 56 (2d Cir. 2009) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008)). At this step, the court considers evidence including "the strength of the plaintiff's prima facie case," as well as "the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50 (2000)) (internal quotation marks omitted; alterations in original).

Plaintiff Martinez argues that, on the basis of his race, he was (1) not provided with adequate supplies; (2) was denied overtime; and (3) was not paid in accordance with the appropriate pay scale under the union collective bargaining agreement. *See* Pl. Rule 56.1 ¶¶ 67–71, 76, 80–84. Plaintiff Oliveras argues that on the basis of her race, national origin, and gender that Defendant Esposito (1) did not permit her to use snow machinery; (2) that she had to clean the worst bathrooms on her shift; and (3) that she was denied overtime. *See* Second Complaint ¶¶ 36–37, 100. Both Plaintiffs also argue that their terminations were motivated by discrimination. *See* Dkt. No. 77 ("Pl. Br.") at 20. The Court now addresses each of these actions.

### a. Overtime Claims

First, Plaintiffs claim they were discriminated against when they were denied overtime payments. *See* Pl. Br. at 19. Both Plaintiffs testified that they received reduced overtime during Defendant Esposito's tenure as the custodial engineer. *See* Pl. Rule 56.1 ¶¶ 67, 117. However, Plaintiffs have not made out the fourth prong of the *prima facie* case—that the reduced overtime

occurred under circumstances giving rise to an inference of discriminatory intent. Plaintiff Martinez testified that the reason he believed he received reduced overtime was possibly in retaliation for Plaintiff Oliveras' lawsuit and union grievance—and did not mention that race or national origin played a role in the reduced overtime. *See* Pl. Rule 56.1 ¶¶ 69, 91. Additionally, Plaintiff Martinez testified that Joseph Luciano, an individual hired as a part-time employee, worked during the hours that Plaintiff Martinez otherwise would have received overtime. Pl. Rule 56.1 ¶ 75. And nowhere in the record did Plaintiff Oliveras testify that Defendant Esposito denied her overtime because of her race, national origin, or gender. The Court has identified one spot in the record where Plaintiff Oliveras testified that she, along with other Hispanic employees were denied overtime, *see* Dkt. No. 80-4 at 40–41—however, that was, according to Plaintiff Oliveras, at the direction of Defendant Rafferty. Accordingly, neither Plaintiff has made out a *prima facie* case against Defendant Esposito regarding their denial of overtime.

Even assuming, *arguendo* that Plaintiffs could make out the *prima facie* case, Defendant Esposito has offered a legitimate, nondiscriminatory reason for Plaintiffs' denial of overtime. Defendant Esposito testified that when he started as the Custodial Engineer, he initially gave Plaintiff Martinez overtime. *See* Pl. Rule 56.1 ¶ 72; Dkt. No. 75-12 at 51–52. Later, New York City Support Services informed Defendant Esposito that he "ha[d] to follow a straight budget now," meaning that he had to not pay out overtime as frequently. *See* Pl. Rule 56.1 ¶¶ 72–73; Dkt. No. 75-12 at 51–52. This necessitated that he hire a part-time employee, Luciano, and pay him for "straight time," as opposed to continuing to pay Plaintiff Martinez additional overtime. *See* Pl. Rule 56.1 ¶¶ 72–73; Dkt. No. 75-12 at 51–52. Additionally, Plaintiff Martinez acknowledged that there were times when Luciano was not available, and Defendant Esposito *would* pay Plaintiff Martinez overtime. *See* Pl. Rule 56.1 ¶ 70. Plaintiff Oliveras acknowledged

13

that that she was informed that there was no budget for her overtime. Pl. Rule 56.1 ¶ 118. Defendant Esposito has therefore met his burden by presenting a legitimate, nondiscriminatory reason for Plaintiffs' adjustment of overtime.

When the burden shifts back to Plaintiffs to show that a reasonable juror could find that Defendant Esposito's proffered explanation is pretext for discrimination—Plaintiffs fail to meet their burden. The Second Circuit has explained that "there are two distinct ways for a plaintiff to prevail – either by proving that a discriminatory motive, more likely than not, motivated the defendants or by proving that the reasons given by the defendants are not true and that discrimination is the real reason for the actions." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (internal quotation marks omitted). Plaintiffs must offer "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks and alterations omitted). Plaintiffs provide none of that here. Accordingly, no reasonable juror could conclude that their denial of overtime was the result of discrimination.

For the foregoing reasons, Plaintiffs' discrimination claims as to unpaid overtime must be dismissed.

### b. Termination Claims

Plaintiffs also argue that both of their terminations constitute discriminatory actions. For the following reasons, no reasonable juror could conclude that either termination was discriminatory.

### i. First Termination

14

The first termination fails under prong three of the *prima facie* case. Both Plaintiffs were reinstated to their positions, and were paid for the hours worked during their termination. *See* Pl. Rule 56.1 ¶¶ 40–41; *see also* Dkt. Nos. 75-26, 75-33 (pay records). Therefore, the first termination was not an "adverse employment action." *See Henry Wilson v. Consol. Edison Co. of New York*, No. 96-CV-7546 (RCC), 2000 WL 335733, at *8 n.14 (S.D.N.Y. Mar. 30, 2000) ("In any event, even if plaintiff was terminated based on a reason that could be deemed pretextual, defendant reinstated him, which would negate any adverse employment action relating to his termination."); *White v. United States Postal Serv.*, 2003 U.S. Dist. LEXIS 17452, at *20 (S.D.N.Y. Sep. 29, 2003) (collecting cases in this Circuit saying the same). Accordingly, Plaintiffs cannot rely on the first termination to make out a discrimination claim.

### ii. Second Termination

As to the second termination, Plaintiffs' establishment of a *prima facie* case fails at prong four. Plaintiffs merely state as to Plaintiff Oliveras: "All of the employees fired by Esposito were Minority members, either Black or Hispanic, including both Plaintiffs. Although [Oliveras] was reinstated in January 2017, Esposito terminated her a second time, on 3-27-2017." Pl. Br. at 11 (citations omitted). Nowhere in the record does Plaintiffs point to any evidence that the *second termination* was motivated by discriminatory intent. Plaintiffs "cannot defeat the motion by relying on the allegations in [their] pleading, or on conclusory statements." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Accordingly, Plaintiffs cannot rely on the second termination to make out a discrimination claim.

Even assuming, *arguendo* that Plaintiffs could make out the *prima facie* case for the second termination, Defendants have offered a legitimate, nondiscriminatory reason for Plaintiffs' second termination. As discussed above, Plaintiff Oliveras' termination notice

explained that she was terminated for punching in Plaintiff Martinez's daily time card before Plaintiff Martinez had actually arrived at work. Pl. Rule 56.1 ¶ 44. And, relatedly, Plaintiff Martinez's termination notice explained that he was terminated because Plaintiff Oliveras had punched in his daily time card before he arrived at work. Pl. Rule 56.1 ¶ 44. Defendant Esposito testified that: (1) he received a text from Plaintiff Martinez indicating that Plaintiff Martinez would be late; (2) he witnessed Plaintiff Oliveras enter the office where time cards are kept at around 7:04 A.M.; (3) he reviewed surveillance footage that showed Plaintiff Oliveras enter the office where time cards are kept around 7:04 A.M.; and (4) the surveillance footage showed Plaintiff Martinez entering the building around 7:40 A.M. Def. Rule 56.1 ¶¶ 45–56. Plaintiff Martinez's time card was punched in as 7:04 A.M. *See* Pl. Rule 56.1 ¶ 52. Defendant Esposito testified that such conduct—punching in someone else's time card—would be considered willful misconduct under the applicable collective bargaining agreement, and would result in termination. Pl. Rule 56.1 ¶ 45. The conduct is also prohibited by the rules and regulations applicable to custodial staff. Pl. Rule 56.1 ¶ 46. Defendant Esposito has therefore met his burden of presenting a legitimate, nondiscriminatory reason for Plaintiffs' second termination.

When the burden shifts back to Plaintiffs to show that a reasonable jury could find that Defendant Esposito's proffered explanation is pretext for discrimination—Plaintiffs fail to meet their burden. Plaintiffs merely argue that Defendants Esposito's rationale for firing them is false. Pl. Br. at 15. However, they have pointed to no evidence to prove "that a discriminatory motive, more likely than not, motivated the defendants or [proved] that the reasons given by the defendants are not true and that discrimination is the real reason for the actions" *Gordon*, 232 F.3d at 117. Accordingly, Plaintiffs' discrimination claim as to the second termination must be dismissed.

### c. Other Discrimination Claims

The rest of Plaintiffs' discrimination claims fail at prong three of the *prima facie* case. The incidents that Plaintiffs argue are an "adverse employment action," do not, as a matter of law, rise to that level, or, are refuted by the record evidence. As the Second Circuit has explained, "[a]n adverse employment action is a materially adverse change in the terms and conditions of employment. To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (citation omitted).

Accordingly, under this precedent, Plaintiff Martinez's testimony that he was not provided adequate supplies in a timely manner does not constitute an adverse employment action. *See Mathirampuzha*, 548 F.3d at 78; *see Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11–12 (2d Cir. 2013). Nor would Plaintiff Oliveras' testimony that she could not use snow machinery. *See Mathirampuzha*, 548 F.3d at 78. It is not clear whether Plaintiff Oliveras having to clean certain bathrooms would constitute an adverse employment, but regardless, no evidence of those allegations have been identified in the record, in either parties' briefs or Rule 56.1 statements, and therefore cannot be the basis of a discrimination claim. *Cordiano*, 575 F.3d at 204; *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.").

As to Plaintiff Martinez's claim that he was not paid in accordance with the appropriate

pay scale under the collective bargaining agreement—nothing in the record supports a reasonable juror concluding this occurred. As discussed above, Plaintiff Martinez had been promoted to handyperson by Defendant Esposito's predecessor. Pl. Rule 56.1 ¶ 76–77. Plaintiff Martinez testified that after he received his promotion to handyperson, he was not sure whether he received the requisite pay increase. Pl. Rule 56.1 ¶ 77. Plaintiff Martinez testified that once he asked Defendant Esposito about the pay increase, Defendant Esposito informed him that the salary increase was reflected in his paycheck. *See* Pl. Rule 56.1 ¶ 79. Accordingly, Plaintiff has failed to show that Defendant Martinez suffered an adverse employment action—as no reasonable juror could conclude from the record that he was denied pay by Defendant Esposito. *See Joseph v. Leavitt*, 465 F.3d 87, 93–94 (2d Cir. 2006) (summary judgment granted for defendant where plaintiff did not suffer an adverse employment action).

For all of these reasons, Plaintiffs' remaining discrimination claims must be dismissed.

### 2. Plaintiff Oliveras' § 1983 Failure to Promote Claim Against Defendant Esposito

As discussed above, the Court will construe Plaintiff Oliveras' failure to promote claim against Defendant Esposito as brought under § 1983. Whether Plaintiff Oliveras suffered a deprivation of her federal right is assessed under the burden-shifting analysis set forth in *McDonnell Douglas*. A plaintiff first bears the minimal burden of establishing a *prima facie* case of a failure-to-promote claim. To make a *prima facie* case with respect to a failure-to-promote claim, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position for which the employer was seeking applications; (3) he was rejected for the position; and (4) this adverse action took place under circumstances giving rise to an inference of discrimination. *Anyanwu v. City of New York*, No. 10-CV-8498 (AJN) (THK), 2013

18

WL 5193990, at *11 (S.D.N.Y. Sept. 16, 2013) (citing *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003)). Thus, there must be "evidence in the record that [the plaintiff] applied and was qualified for a job for which the employer was seeking applicants." *Rich v. Associated Brands Inc.*, 559 F. App'x 67, 68 (2d Cir. 2014) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

Plaintiff Oliveras argues that Defendant Esposito denied her a promotion to the position of handyperson because of her gender and, instead, hired other individuals for the position despite knowing that Plaintiff was qualified. *See* Pl. Rule 56.1 ¶ 99. It is under the second prong of the *prima facie* case that Plaintiff Oliveras' failure to promote claim fails. The three individuals that Plaintiff Oliveras testified were selected over her—Ron Spring, Nick Basomato, and Maria Pascal—are not proper comparisons because they were all hired to work for one or two days per week as part-time employees. *See* Pl. Rule 56.1 ¶¶ 102, 104, 108. Plaintiff Oliveras never demonstrates, in the record, that Defendant Esposito actually hired a full-time handyperson instead of Plaintiff Oliveras. She testified that, other than those three individuals, she did not know of other employees who were hired. *See* Pl. Rule 56.1 ¶ 109. Plaintiffs, in their opposition brief, fail to identify any open positions Defendant Esposito was seeking applicants for that Plaintiff Oliveras was rejected from—a necessary element of a failure to promote claim. Thus, Defendants have met their burden on this claim. *See Cordiano*, 575 F.3d at 204.

For all of these reasons, Defendants' motion as to Plaintiff Oliveras' § 1983 failure to promote claim against Defendant Esposito is granted.

### 3. Plaintiffs' § 1983 Retaliation Claims Against Defendant Esposito

As discussed above, the Court will construe Plaintiffs' retaliation claim against

Defendant Esposito as brought under § 1983. Whether Plaintiffs suffered a deprivation of their federal right is assessed under the burden-shifting analysis set forth in *McDonnell Douglas*. Federal retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*. *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013).

In order to establish a *prima facie* case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) (internal quotation marks and citation omitted).

First, as to the protected activity known to Defendant Esposito, Plaintiffs state in a conclusory fashion that "Defendant cannot take issue with regard to their knowledge that Plaintiff Oliveras had engaged in protected activity," but fail to identify the protected activity. Pl. Br. at 21; *see also Amnesty*, 288 F.3d at 470. The Court presumes it was Plaintiff Oliveras' first lawsuit against Defendant DOE and Defendant Rafferty, which was first filed on September 10, 2015. *See* Dkt. No. 1. This would constitute a protected activity. *See Cook v. CBS, Inc.*, 47 F. App'x 594, 596–97 (2d Cir. 2002) (citing *Manoharan v. Columbia Univ. Coll. Of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir.1988)). There is also the possibility that Plaintiffs are referencing the union grievances that Plaintiff Oliveras had filed as protected activities. Pl. Rule 56.1 ¶¶ 110–11. However, Plaintiff Oliveras' union grievances cannot constitute a protected activity. Protected activity constitutes actions "taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Here, there is no evidence in the record that the union grievances complained of unlawful discrimination. Rather, there is only evidence that the grievances were filed because Defendant Esposito hired someone

with "less seniority or from outside the building." Pl. Rule 56.1 ¶ 110. Accordingly, the union grievances cannot be the basis for a retaliation claim. *See Carrion v. Local 32B-32J Serv. Employees Int'l Union, AFL-CIO*, No. 3-CV-1896 (THK), 2005 WL 659321, at *15 (S.D.N.Y. Mar. 21, 2005) ("Plaintiff's filing of grievances with the Union is not 'protected activity' under the anti-discrimination statutes unless his grievances raised the issue of discrimination."); *Rector v. United States Dep't of Justice*, No. 14-CV-1883 (CM), 2016 WL 7188135, at *9 (S.D.N.Y. Nov. 22, 2016); *Perez v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 00-CV-1983 (LAP), 2004 WL 1824100, at *15 (S.D.N.Y. Aug. 16, 2004). Therefore, the Court will only address whether Plaintiffs can state a *prima facie* case of retaliation with Plaintiff Oliveras' first lawsuit as the protected activity.

As to the adverse employment action, Plaintiffs, again, fail to identify, with specificity, the adverse employment action. *See Amnesty*, 288 F.3d at 470. The Court presumes it was Plaintiffs' terminations, *see* Pl. Rule 56.1 ¶¶ 90, 95, or Plaintiff Martinez's alleged denial of overtime, *see* Pl. Rule 56.1 ¶ 69. Neither party identifies anywhere in the record where Plaintiff Oliveras' denial of overtime was considered retaliatory. *See Amnesty*, 288 F.3d at 470. The Court now discusses each of these adverse employment actions.

### a. The Terminations

As discussed, a causal connection between the protected activity and the employment action disadvantaging a plaintiff must be shown. *See Feingold*, 366 F.3d at 156. "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."

21

*Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (citation omitted). Plaintiffs provide no evidence of disparate treatment of fellow employees who also engaged in a similar protected activity—which could support an inference of causation. *See DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987). Nor can Plaintiffs rely on the temporal proximity between the protected activity—the first lawsuit—and any adverse employment action. It is true that the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation," *Gorzynski v. JetBlue Airways Corp., 596 F.3d 93*, 110 (2d Cir. 2010), and has held that spans of four or five months, in certain circumstances, are sufficient to establish a causal relationship. *See id.*; *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 555 (2d Cir. 2001). However, here, Plaintiffs' December 17, 2016 and March 27, 2017 terminations each occurred over a year following Plaintiff Oliveras' filing of her lawsuit on September 10, 2015. *See* Pl. Rule 56.1 ¶¶ 1, 10, 34, 43. Such length of time, without additional evidence, breaks a causal connection. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (noting that retaliation claims relying solely on temporal proximity to demonstrate a causal connection are difficult to prove, and that the temporal proximity must be "very close"); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F.Supp.2d 257, 275 (S.D.N.Y.2007) (citing cases for the proposition that on summary judgment a gap of two or three months, without more, "does not allow for an inference of causation"); *Peguero-Miles v. City Univ. of N.Y.*, 13-CV-1636 (AJN), 2015 WL 4092336, at *11 (S.D.N.Y. Jul. 6, 2015) (seven-month lapse between protected activity and adverse action made inference of causation "exceedingly weak"). Plaintiffs also state that "Defendant Esposito began to retaliate and harass and or condone such harassment against both Plaintiffs, because Ms. Oliveras mentioned him in her [amended

complaint]." *See* Pl. Br. at 22. However, even if the Court were to consider Plaintiff Oliveras'
amendment of her complaint in the first case as a separate protected activity—her amended
complaint was filed on April 25, 2016. Dkt. No. 33. For all of the same reasons as discussed
above, that length of time—eight months prior to the first termination—would also break a
causal connection.

Finally, Plaintiffs state in a conclusory fashion that "the record evidence clearly shows
that Defendant Esposito began to retaliate and harass and or condone such harassment against
both Plaintiffs, because Ms. Oliveras mentioned him in her [amended complaint]" and that "a
jury can connect the dots and determine that Plaintiffs' terminations were truly retaliatory." Pl.
Br. at 22–23. Plaintiffs do not cite to any relevant evidence in the record to support this claim.
This is insufficient to survive summary judgment. *Gottlieb*, 84 F.3d at 518 ("The motion will
not be defeated merely . . . on the basis of conjecture or surmise."); *Scott*, 550 U.S. at 380.

### b. Plaintiff Martinez's Overtime

For the same reasons as discussed above, Plaintiffs cannot establish a causal connection
between Plaintiff Martinez's reduced overtime payments, and the filing of the first lawsuit.
Plaintiff Martinez could not recall when his reduction in overtime payments occurred, but
indicated it was after Plaintiff Oliveras had participated in a union grievance hearing against
Defendant Esposito. Pl. Rule 56.1 ¶ 69. Plaintiff Oliveras testified that her union grievance
hearing was sometime between October 4, 2016 and late December, 2016. *See* Pl. Rule 56.1 ¶
69. Thus, the reduced overtime—which occurred sometime after October 4, 2016—and the
September 10, 2015 lawsuit were over a year apart. And again, even if the Court were to
consider Plaintiff Oliveras' amendment of her complaint in the first case as a separate protected
activity—her amended complaint was filed on April 25, 2016. Dkt. No. 33. For all of the same

23

reasons as discussed above, that length of time—almost six months prior to the reduced overtime—would also break a causal connection.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' § 1983 retaliation claims is granted.

### 4. Remaining § 1983 Claims

In their Second Summary Judgment motion, Defendants also moved for summary judgment on: (1) Plaintiffs' § 1983 hostile work environment claim against Defendant Esposito; and (2) Plaintiff Oliveras' § 1983 discrimination, retaliation, and hostile work environment claims against Defendant Rafferty. However, Defendants made no substantive arguments as to why these claims should be dismissed, but simply argued that under *Duplan*, the Court must dismiss these claims as a matter of law. *See* Dkt. No. 90 at 3–5. As discussed above, following the Second Circuit's approach in *Duplan,* the Court will construe these claims, although alleged as § 1981 claims, as brought under § 1983. *See Duplan*, 888 F.3d at 621. Accordingly, Defendants' motion is denied as to Plaintiffs' § 1983 hostile work environment claim against Defendant Esposito, and Plaintiff Oliveras' § 1983 discrimination, retaliation, and hostile work environment claims against Defendant Rafferty, as Defendants did not make any substantive arguments as to these claims, and therefore have provided no basis on which the Court could grant summary judgment.

### B. Plaintiffs' NYCHRL Claims

Defendants also move for summary judgment on (1) all NYCHRL claims against Defendant DOE; (2) Plaintiffs' discrimination and retaliation claims under NYCHRL; (3) Plaintiff Oliveras' failure to promote claim under NYCHRL. The Court now addresses each of these claims.

24

### 1. Plaintiffs' NYCHRL Claims against Defendant DOE

All of Plaintiffs' NYCHRL claims against Defendant DOE are barred. Section 3813 of the New York State Education Law requires that a Notice of Claim be filed within ninety days of the alleged act of discrimination. N.Y. Educ. Law § 3813(2); N.Y. Gen. Mun. Law § 50–e. "It is well-settled that compliance with Education Law § 3813 is a condition precedent to commencement of an action against a school board, its members or employees." *Grennan v. Nassau County*, 2007 WL 952067, at \*17 (E.D.N.Y. Mar. 29, 2007). The New York Court of Appeals has stated that "no action or proceeding may be prosecuted or maintained against any school district or board of education unless a notice of claim has been presented to the governing body and [a] court may not disregard [this] pronouncement." *Parochial Bus Sys., Inc. v. Bd. of Educ.*, 60 N.Y.2d 539, 547 (1983) (internal quotation marks and citation omitted). Neither Plaintiff Oliveras nor Plaintiff Martinez filed any notices of claims. Accordingly, all NYCHRL claims against Defendant DOE must be dismissed. *See id.*

### 2. Plaintiffs' NYCHRL Discrimination And Retaliation Claims Against Defendant Espositio, And Plaintiff Oliveras' NYCHRL Failure To Promote Claim Against Defendant Espositio

NYCHRL should be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (internal quotation marks omitted). Accordingly, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks omitted). However, the NYCHRL is not a "general civility code." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (N.Y. App. Div. 2009) (internal

quotation marks omitted). "[D]istrict courts may still grant summary judgment with respect to NYCHRL claims if there is no genuine dispute as to any material fact regarding plaintiff's claim and the employer's affirmative defense." *Mihalik*, 715 F.3d at 112.

To establish discrimination under the NYCHRL, a plaintiff must still "show that [plaintiff's] employer treated [plaintiff] less well than other similarly situated employees, at least in part for discriminatory reasons." *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 836 (S.D.N.Y. 2013) (internal quotation marks and alterations omitted).

Similarly, for a failure-to-promote claim, "under the NYCHRL's more liberal standards . . . a plaintiff must still show that the conduct complained of is caused by a discriminatory motive." *Pouncy v. Advanced Focus LLC*, No. 15-CV-6260 (JMF), 2017 WL 4280949, at *4 n.1 (S.D.N.Y. Sept. 25, 2017) (internal quotation marks and citations omitted).

To establish a retaliation claim under the NYCHRL, "there is no requirement that the employee suffer a materially adverse action. However, a plaintiff claiming retaliation under the NYCHRL must still show that her employer was aware she engaged in a protected activity, and that there was a causal connection between the protected activity and the employer's subsequent action. *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 592 (S.D.N.Y. 2012) (internal quotation marks and citations omitted), *aff'd*, 526 F. App'x 124 (2d Cir. 2013).

For all of the reasons discussed above as to Plaintiffs' corollary § 1983 claims, even under the more liberal standards of the NYCHRL, Plaintiffs are unable to make out their discrimination, retaliation, and failure to promote claims against Defendant Esposito. In their brief opposing Defendants' First Summary Judgment, Plaintiffs makes no effort to argue that, if their § 1983 claims do not survive summary judgment, their NYCHRL claims nonetheless should. *See* Pl. Br. at 25. They therefore have pointed to no evidence, beyond what the Court

26

has already discussed and rejected, to make out their claims. Accordingly, Defendants are also granted summary judgment on the NYCHRL discrimination, retaliation, and failure to promote claims against Defendant Esposito.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment as to: (1) Plaintiffs' discrimination and retaliation claims under § 1983 and the NYCHRL against Defendant Espositio; (2) Plaintiff Oliveras' failure to promote claim under § 1983 and the NYCHRL against Defendant Esposito; and (3) all NYCHRL claims brought against Defendant DOE is GRANTED. Defendants' motion for summary judgment as to Plaintiffs' § 1983 hostile work environment claim against Defendant Esposito, and Plaintiff Oliveras' § 1983 discrimination, retaliation, and hostile work environment claims against Defendant Rafferty is DENIED. This resolves Docket Numbers 72 and 89.

Accordingly what remains in this consolidated action is: (1) Plaintiff Oliveras' § 1983, Title VII, and NYCHRL discrimination, retaliation, and hostile work environment claims against Defendant Rafferty in the First Complaint (2) Plaintiff Oliveras' Title VII discrimination, retaliation and hostile work environment claims against Defendant DOE in the First Complaint (3) Plaintiffs' § 1983, and NYCHRL hostile work environment claims against Defendant Esposito in the Second Complaint. Plaintiffs are granted leave to amend their complaints to add a citation to § 1983, where relevant.

Within one week of the date of this Opinion & Order, the parties shall meet and confer regarding settlement. The Court will hold a scheduling conference with the parties on April 18, 2019 at 2:00 p.m. No later than seven days prior to the scheduling conference the parties shall file a status letter with the Court indicating: (1) the status of settlement negotiations; (2) whether

they seek a referral to either the Magistrate Judge or the Court-annexed Mediation Program for settlement; and (3) requested trial dates.

SO ORDERED.

Dated: March 21, 2019
New York, New York

ALISON J. NATHAN
United States District Judge